Donna J. DOUGHTY, Plaintiff,

v.

**CITY OF VERMILLION,
et al., Defendants.**

No. 1:98CV2867.

United States District Court,
N.D. Ohio,
Eastern Division.

June 8, 1999.

James H. Banks, Dublin, OH, for Donna J. Doughty, plaintiff.

Alan E. Johnson, Baughman & Associates, Cleveland, OH, Kenneth S. Stumphauzer, Baumgartner & O'Toole, Amherst, OH, Leo R. Ward, Ward & Associates, Cleveland, OH, Abraham Lieberman, Lorain, OH, for City of Vermilion Ohio, defendant.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff Donna Doughty brings this action against the City of Vermilion and also several "John Doe" defendants. Doughty alleges that she performs as a semi-nude dancer at an adult entertainment establishment known as FantasyLand Lakeside, which is located in Vermilion, Ohio. Doughty further alleges she was arrested for violating Vermilion Ordinance § 666.18(c), which prohibits a dancer, while semi-nude, from being within 6 feet of another dancer or patron. Doughty asserts her arrest and prosecution were unlawful because the Ordinance is unconstitutional. Thus, Doughty brings claims against defendants for: (1) deprivation of her right to free speech, in violation of 42 U.S.C. § 1983; (2) conspiracy to deprive her of her right to free speech, in violation of 42 U.S.C. §§ 1985 & 1986; (3) malicious prosecution, in violation of state law; and (4) abuse of process, in violation of state law.

The defendants move to dismiss this action (docket no. 7). For the reasons stated below, this motion is **GRANTED** and this case is **DISMISSED.**[1]

### I.

For the purpose of ruling on the motion to dismiss, the Court accepts the following allegations as true. Doughty works as a semi-nude dancer in an adult cabaret known as FantasyLand Lakeside. As an employee of an adult cabaret, Doughty is required to abide by the provisions of Vermilion Ordinance § 666.18. Among other things, this provision requires that "[a]ny employee on the premises of an adult cabaret in a state of semi-nudity must be on a stage that is ... [r]emoved at least six feet (6') from the nearest other employee and/or customer." Ordinance at § 666.18(c)(2). On May 12, 1998, Doughty was charged with violating this provision. She was subsequently found guilty, following her entry of a plea of no contest.[2] Finally, Doughty adds the allegation that when Vermilion enacted Ordinance § 666.18, it failed to comply with the posting, notice, and reading requirements contained in Ohio's "Sunshine Law," Ohio Rev.Code § 121.22. Doughty does not, however, assert a separate claim for violation of the Ohio Sunshine Law.[3]

### II.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991); *Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882 (6th Cir.1990); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III.

This Court has a high degree of familiarity with the Vermilion Ordinance which Doughty challenges here. Only a year ago, this Court issued a preliminary injunction in the case of *Threesome Entertainment v. Strittmather,* 4 F.Supp.2d 710 (N.D.Ohio 1998). In that case, the owner of FantasyLand Lakeside challenged the constitutionality of Vermilion Ordinance

---

**1.** Apart from the Court's reasoning set out below, it is clear that the John Doe defendants must be dismissed from this case. Rule 4(m) states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." Fed.R.Civ.P. 4(m). This case was filed on December 11, 1998, so Doughty had until April 10, 1999 to complete service of the summons and complaint upon all defendants. The record reveals that Doughty has not obtained service of process upon any of the John Doe defendants. Thus, the Court grants the defendants' motion to dismiss the John Doe defendants from the case for the additional reason of failure of service of process.

**2.** In her complaint, Doughty alleges that due to the configuration of the premises, the "six feet" requirement prohibits a FantasyLand Lakeside dancer from even walking from the dressing room to the stage to perform. Complaint at ¶ 16. The Court does not accept this allegation as true, however, because it is clearly a (false) legal conclusion. See section V A of this opinion, below.

**3.** Doughty invokes the Court's supplemental jurisdiction over state law claims only when she refers to her claims for malicious prosecution and abuse of process. Complaint at ¶¶ 46–48.

§ 666.18. The Court granted in part a motion for preliminary injunction, holding that certain aspects of the Ordinance, as it was then written, were unconstitutional.[4] The Court also concluded, however, that other aspects of the Ordinance did pass constitutional muster. Specifically, the Court concluded that: (1) the Ordinance could legally require dancers to wear G-strings and pasties, *id.* at 721; (2) the Ordinance could legally prohibit dancers and patrons from fondling their own or one another's genitals, and from engaging in sexual intercourse, *id.* at 721–22; (3) the Ordinance's requirement that no semi-nude employee could touch another employee or customer was overly broad, as it did not exclude unintentional touching, *id.* at 722–23; (4) the Ordinance could legally require that dancers, while semi-nude, remain at least six feet away from customers, *id.* at 723–24; (5) the Ordinance's requirement that the dancers perform on a stage raised 45 inches from floor level was unconstitutional, as this requirement essentially left no room for dancing at all, *id.* at 724–25; (6) the Ordinance could legally prohibit minors and persons recently convicted of felonies or sex crimes from working in an adult cabaret, *id.* at 725–26; (7) the Ordinance could legally require patrons to present two forms of identification before entering an adult cabaret, and could prohibit entry of minors, *id.* at 726–27; and (8) the Ordinance's prohibition against a person's participation in the operation of an adult cabaret where any other participant had violated the Ordinance was unconstitutionally overbroad, *id.* at 727–28.

Following the Court's entry of the order granting preliminary injunctive relief, the parties settled their dispute, agreeing that the Court's order granting preliminary injunction would be adopted as a permanent injunction. The plaintiffs later sought to vacate this settlement, apparently having changed their mind and having decided they wanted to test this Court's determination on appeal. The Court, however, denied the motion to vacate settlement, and dismissed the case.

Counsel for the plaintiff in this case, who also represented the plaintiffs in *Strittmather*, has stated candidly to the Court that a large part of the purpose in bringing this action is to effectively pursue a "late appeal" of the Order granting injunctive relief which the Court entered in *Strittmather*.[5] It is against this background that the Court must assess the defendants' motion to dismiss.

### IV.

As best this Court can tell, Doughty asserts five separate claims in her complaint—three based on federal law and two based on state law.[6] First, Doughty asserts that the provision contained in the Ordinance at § 666.18(c), requiring that a semi-nude dancer be "removed at least six feet (6') from the nearest other employee and/or customer," is unconstitutional. She asserts that Vermilion's enforcement of this provision of the Ordinance violates 42 U.S.C. § 1983. This claim is clearly the centerpiece of her complaint. Complaint at ¶¶ 15–18.

Doughty also makes a vague claim that the Ordinance "contains impermissible regulatory factors ... regarding background investigation and criminal records of its employees, location of stage and prohibition against nudity." Complaint at ¶ 31. This claim, also premised on § 1983, is apparently directed at the Ordinance's provisions contained in § 666.18(a)(1)(2) (prohibiting total nudity), § 666.18(c) (pro-

---

**4.** Subsequent to the Court's ruling, Vermilion modified those provisions of the Ordinance that the Court had concluded were not constitutional.

**5.** Counsel made this statement during a case management conference with the Honorable Patricia A. Gaughan, who met with the parties before the case was transferred to the undersigned.

**6.** Doughty's complaint is not very clear regarding which aspects of the Ordinance she challenges.

mulgating certain stage requirements), and § 666.18(d) (prohibiting minors and recent criminals from being employees). Doughty does not allege, however, that Vermilion's enforcement of these provisions has caused her any harm.

Doughty's third federal law claim is that Vermilion's enforcement of the provisions recited above was done in conspiracy with certain unnamed "John Doe" defendants, and that the defendants are all thus liable to her under 42 U.S.C. §§ 1985 & 1986. Complaint at ¶ 44.[7]

Doughty then adds two claims based on state law: (1) the defendants' prosecution of Doughty for violating the six foot buffer zone provisions contained in § 668.13(c)(2) constituted malicious prosecution; and (2) the defendants' prosecution of Doughty also constituted abuse of process.

Having parsed Doughty's complaint to determine precisely what claims Doughty has attempted to assert, the Court now examines whether Doughty has stated claims upon which relief can be granted.

## V.

### A. The Six–Foot Buffer Zone Claim.

■ Doughty's central claim is that the provision of the Ordinance which she was found guilty of violating—breaching the six foot buffer zone while semi-nude—is unconstitutional. As noted above, however, in *Strittmather*, this Court concluded that the six foot buffer zone requirement contained in § 666.18(c) easily passes constitutional muster. This conclusion was based on case law from the Sixth Circuit Court of

Appeals that was directly on point. In *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir.1997), the Sixth Circuit reviewed a city ordinance requiring "all performances [by dancers in adult cabarets to] only occur upon a stage at least eighteen inches (18″) above the immediate floor level and removed at least six feet (6′) from the nearest entertainer, employee and/or customer." *Id.* at 406. The Court of Appeals upheld the ordinance, stating: "we join those courts that have determined that similar buffer-zone requirements are sufficiently narrowly tailored to be valid regulations under the First Amendment." *See also Strittmather*, 4 F.Supp.2d at 723–24 (reciting numerous federal appellate court cases affirming similar provisions).[8]

In her response to defendants' motion to dismiss, Doughty argues that, given the physical construction of FantasyLand Lakeside, it is physically impossible for a dancer to perform in compliance with the six-foot buffer zone provision. Specifically, Doughty notes that the distance between the bar and stage near the restrooms is only four feet. She asserts that this configuration makes it impossible for a dancer to remain at least six feet from patrons and other employees as she walks from the dressing room to the stage or to the restroom. *See* response brief at 9–10.

Doughty's argument, however, is based on a misreading of the Ordinance. The Court accepts as true Doughty's assertion that, to walk from her dressing room to the stage or restroom, she is forced to pass within six feet of patrons at the bar area. But the Ordinance prohibits only *semi-*

---

7. In her complaint, Doughty also appeared to make a federal law claim that the Ordinance contains an illegal licensing scheme. Complaint at ¶ 32 (alleging that the Ordinance "provides no appeal process whatsoever with regard to any of the matters raised herein; rather it makes any violation of the Ordinance criminal"); *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure

prompt issuance of the license"). It is clear, however, that the Ordinance contains no licensing procedure. Thus, the Court assumes this allegation is made in error; Doughty obviously cannot prevail on such a claim.

8. Given that the Court relies frequently in this opinion on the conclusions it reached in *Strittmather*, the Court hereby incorporates into this memorandum the entirety of its *Strittmather* opinion.

*nude* dancers from being within six feet of a customer. A dancer will not run afoul of the law if, for example, she walks through a crowd of customers while clothed, ascends the stage and strips to a state of semi-nudity (while protected by a 6–foot buffer zone), and then dons her clothing again before descending from the stage. Doughty might find it easier or subjectively more "artistic" to walk from the dressing room and climb on stage while semi-nude, instead of disrobing on stage. But it is clearly not "impossible" for her to comply with the Ordinance.[9] The configuration of the cabaret may be inconvenient, but this does not make the Ordinance unconstitutional.[10]

Simply, Doughty has provided no allegation suggesting that the Court's legal conclusion in *Strittmather* regarding the constitutionality of the six-foot buffer zone is not applicable to the circumstances of her case. Under the existing legal landscape, Doughty's claim is, beyond peradventure, not one upon which relief can be granted.[11]

### B. The Claim Regarding Other of the Ordinance's Provisions.

In the most general fashion, Doughty asserts that other provisions of the Ordinance are unconstitutional: she alleges that the "Ordinance also contains impermissible regulatory factors, including but not limited to the requirements regarding background investigation and criminal records of its employees, location of stage and prohibition against nudity." Complaint at ¶ 31. Doughty offers no allegations whatsoever regarding *how* these "regulatory factors" are unconstitutional, either in general or as applied to her, nor does she allege that the defendants' enforcement of these provisions has caused her any actual injury.[12]

█ In *Strittmather*, this Court easily concluded that § 666.18(a)(1)(2) of the Ordinance, which prohibits a dancer from appearing totally nude, is not unconstitutional. *Strittmather*, 4 F.Supp.2d at 721. As the Supreme Court has noted, "the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message less graphic." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 571, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). There is no question that the prohibition of total nudity contained in the Ordinance is constitutional.

---

9. A buffer-zone requirement of less than six feet might make it easier for Doughty to legally travel from the dressing room to the stage while semi-nude. But this has no bearing on Doughty's argument. *See DLS, Inc.*, 107 F.3d at 413 ("it is not for us to say that a seven-foot zone or a five-foot zone would strike a better balance" between Vermilion's and Doughty's interests). Further, the owner of Fantasy-Land Lakeside could presumably renovate the cabaret to remove the configuration problem. That this solution might be expensive is also of no moment. *Id.* ("the inquiry for First Amendment purposes is not concerned with economic impact") (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)).

10. Doughty suggests in passing that, in fact, she was not semi-nude when she passed within six feet of a customer or co-employee: "plaintiff was charged and convicted on said Ordinance despite the fact that she was clothed, based upon the City's overly broad interpretation of the Ordinance." Brief in opposition at 7–8. Even accepting this assertion as true, however, this does not change the conclusion that the statute is constitutional *as written*. If Doughty was never semi-nude while within six feet of a customer or other employee, then she had a defense to her criminal charge, and she should have raised this defense in her state criminal proceeding.

11. Doughty does suggest that, because the opinion in *Strittmather* was issued in the context of a motion for preliminary injunctive relief, not permanent relief, *Strittmather* is not controlling. This argument fails for two reasons: (1) the Court in *Strittmather* later adopted its Order granting preliminary injunctive relief as an order of permanent injunction; and (2) the appellate case law cited in *Strittmather* controls the result in this case just as much as the *Strittmather* opinion itself.

12. Given the lack of any allegation that a defendant's enforcement of the challenged provisions caused her any injury, it is highly questionable whether Doughty has standing to pursue this claim.

■ Similarly, this Court easily concluded that the six-foot buffer zone contained in § 666.18(c) suffers no constitutional infirmity. *Strittmather*, 4 F.Supp.2d at 723–24. This conclusion is discussed immediately above. The Court also concluded in *Strittmather* that the requirement in the Ordinance that semi-nude dancers must perform on a stage at least 45 inches high *was* unconstitutional, because "the elevation requirement has the practical effect of prohibiting nude dance from occurring at a considerable number of otherwise permissible locations." *Id.* at 724 (noting that most buildings had ceiling heights of 96 inches). The Court added, however, that "[a] lower elevation would almost certainly survive constitutional scrutiny." *Id.* at 724 n. 10 (citing cases). In fact, the Sixth Circuit Court of Appeals has upheld a reasonable stage height requirement. *See DLS, Inc.*, 107 F.3d at 412 (upholding an 18–inch stage height requirement and citing other cases that upheld various stage height requirements). After this Court issued its ruling in *Strittmather*, Vermilion amended its Ordinance to impose a 24–inch height requirement. Doughty offers no suggestion whatsoever why or how this stage height requirement might be unconstitutional, either in general or as applied to her.[13]

■ Finally, this Court easily concluded that the provisions contained in § 666.18(d), which prohibit an adult cabaret from employing persons who are minors, recent felons, and recent sex-criminals, are constitutional. *Strittmather*, 4 F.Supp.2d at 725–26. The Court's reason for upholding the constitutionality of these provisions was that "the Sixth Circuit Court of Appeals, in *DLS, Inc.*, upheld a virtually identical provision in a Chattanooga, Tennessee law." *Id.* Again, Doughty offers no suggestion whatsoever why or how these provisions might be unconstitu-

tional, either in general or as applied to her.

In sum, as with her first claim, Doughty has provided no allegation suggesting that the conclusions in *Strittmather* regarding the various provisions she mentions in her complaint are not applicable to the circumstances of her case. Given the clearly applicable law, Doughty's second federal law claim is not one upon which relief can be granted.

### C. Conspiracy Claims.

■ Doughty also claims that the defendants conspired to deprive her of her civil rights. This claim fails as a matter of law for at least two reasons. First, as set forth above, Doughty fails to state a claim that the defendants deprived her of any civil right; as such, she cannot state a claim that they conspired to do so. Second, a conspiracy claim under § 1985 must include an allegation of a "class-based discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Doughty makes no such allegation. Accordingly, defendants are entitled to dismissal of Doughty's federal law conspiracy claim for failure to state a claim upon which relief can be granted.

### D. Doughty's Remaining Claims.

■ All of Doughty's remaining claims are premised on state law. Subject matter jurisdiction in this case, however, was based on the existence of a federal question. This Court has jurisdiction over Doughty's state law claims only if they are so related to her federal law claims that they are part of the same case or controversy. 28 U.S.C. § 1367(a) (defining the court's "supplemental" jurisdiction). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the federal claims over which it

---

**13.** Indeed, as the Court observed in *Strittmather*, "it would be difficult ... to argue that a reasonable stage elevation requirement infringes on ... First Amendment rights, be-

cause a 'platform only enhances visibility.' " *Strittmather*, 4 F.Supp.2d at 724 n. 10 (quoting *DFW Vending, Inc. v. Jefferson County, Texas*, 991 F.Supp. 578, 594 (E.D.Tex.1998)).

had original jurisdiction have all been dismissed. "[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir.1990). Accordingly, this Court, in its discretion, dismisses Doughty's supplemental state law claims, without prejudice, for lack of a substantial federal claim.[14]

*E. Additional Observations.*

For purposes of clarification and amplification, the Court adds the following three observations. The first observation regards Doughty's allegation that, when Vermilion passed the Ordinance, it violated Ohio's Sunshine Law, Ohio Rev.Code § 121.22. Doughty seems to suggest that this violation of the Sunshine Law somehow creates a federal law claim.

 The Court disagrees. It is clear that "a mere violation of ... a state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995). Furthermore, the test for content-neutrality of a statute, under *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), requires only that the challenged statute "is within the constitutional power of the government." *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673. There is no question that passage of the Ordinance in this case was within the constitutional power of state government. *See In re Tennessee Public Indecency Statute*, 1999 WL 55276 at *3 (6th Cir. Jan 13, 1999) ("prevention of offenses such as sexual assault, prostitution, and other crime-related activity does fall within the constitutional power of the state"). Thus, even if Vermilion did not enact the Ordinance in conformity with state law, this does not support a federal

law claim that the Ordinance is not content-neutral.

The Court's second observation concerns Doughty's assertion that the Court reached a conclusion in *Strittmather* that was not supported by the evidence, so the Court should not rely on *Strittmather* in this case. In *Strittmather*, the Court examined the question of whether Vermilion's goal in enacting the Ordinance was to "control only 'secondary effects' related to protected expression [or, instead, to control] the protected expression itself." *Id.* at 718. The Court concluded that the Ordinance was content-neutral and that Vermilion presented "ample evidence" showing it "legitimately target[ed] the asserted secondary effects," not the protected speech itself. *Id.*

In discussing and rejecting the plaintiffs' attempts to show that Vermilion's efforts to curb secondary effects were really pretextual, the Court examined Vermilion's delay in issuing an occupancy permit to the *Strittmather* plaintiffs. *Id.* at 719. The Court noted that "delaying the issuance of an occupancy permit required Vermilion to obtain the intervention of, and survive the scrutiny of, the Lorain County Court of Common Pleas. That Vermilion survived this scrutiny suggests it was acting legally. Thus, Vermilion's refusal to issue an occupancy permit does not cast Vermilion's passage of the Ordinance in a bad light." *Id.* Doughty asserts that, in fact, the Lorain County Court of Common Pleas did not really "scrutinize" Vermilion's refusal. Response brief at 8–9. Even if Doughty is correct, however, there remains in *Strittmather* "ample evidence" that Vermilion sought only to control the "secondary effects" and not the protected expression. Simply, Doughty has not distinguished *Strittmather* in any way that serves to save her claims in this case.

 Finally, the Court adds an observation regarding the doctrine of res judicata.

14. It appears certain that Doughty's malicious prosecution claim fails as a matter of law even under state law, moreover, because

she was convicted of the criminal charges asserted against her.

The defense of res judicata has four elements: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action. *Sanders Confectionery Products v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir. 1992). The defendants in this case explicitly did not rely on the doctrine of res judicata. Out of an abundance of caution, however, Doughty argued that res judicata did not apply because she was not a party in *Strittmather,* nor a party's privy, so defendants cannot make out the second element of the defense.

 A privy includes "one whose interests were adequately represented." *Id.* at 481. Without fully reaching the res judicata question, the Court observes that, several times, the plaintiffs in *Strittmather* testified they were representing the interests of the dancers who performed at FantasyLand Lakeside. These statements found some reflection in the Court's opinion. *See Strittmather,* 4 F.Supp.2d at 716 ("Harris asserts that the Ordinance ... reduces his ability to present, *through his dancers,* an artistic and erotic message") (emphasis added); *id.* at 726 ("Harris complains that the [Ordinance's requirement that patrons present two forms of identification] is excessive because ... patrons are deterred from entering the cabaret and receiving the message *he and his dancers* wish to communicate") (emphasis added). Given that Doughty's counsel also represented the plaintiffs in *Strittmather,* the Court finds somewhat disingenuous the assertion that the doctrine of res judicata does not apply because the interests of the dancers at FantasyLand Lakeside were not adequately represented by the plaintiffs in *Strittmather.*

## VI.

To summarize, the Court concludes that Doughty presents no "viable legal theory" under which she can recover for any of her federal law claims. *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1103 (6th Cir.1995). Put more simply, Doughty has failed to present a federal law claim upon which relief can be granted. Accordingly, the defendants' motion to dismiss Doughty's federal law claims is granted, with prejudice; the defendants' motion to dismiss Doughty's state law claims is granted, without prejudice; and this case is dismissed.

**IT IS SO ORDERED.**